UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSHUA RAY FISHER,<br><br>Defendant. | Case No. 2:17-cr-00073-APG-EJY<br><br>**ORDER** |

Pending before the Court is the Motion to Disqualify Defendant Joshua Ray Fisher's Appellate Counsel. ECF No. 235. In its Motion the government contends that appellate counsel, Michael Humphreys ("Humphreys"), must be disqualified as appellate counsel for Joshua Fisher ("Defendant" or "Joshua Fisher") because Humphreys was part of the asset forfeiture team ("AFT" or the "Team") at the U.S. Attorney's Office ("USAO") during which time the AFT assisted with asset forfeiture against Joshua Fisher. *Id*. The government contends Humphreys' involvement was sufficiently personal and substantial to require disqualification. Defendant disagrees. The Court considered the government's Motion, Defendant's Opposition (ECF No. 239), and the government's Reply (ECF No. 240). For the reasons stated below, the Court denies the government's Motion to Disqualify.

**I.    Background**

    A.    <u>Facts as Stated in the Government's Motion</u>.

Apparently commencing sometime in 2010 through October 2018, Humphreys was employed as an Assistant U.S. Attorney ("AUSA") in the Nevada USAO working on asset forfeiture in support of the prosecution of criminal cases. Dan Hollingsworth ("Hollingsworth"), also an AUSA in the Nevada USAO for more than 32 years, was the other AUSA assigned to asset forfeiture. Hollingsworth states that he and Humphreys were "jointly assigned to approximately 200 cases."

ECF No.235-1 (Declaration of Dan Hollingsworth) at 1 ¶ 1.[1]  Beginning in February 2017, Humphreys and Hollingsworth were jointly responsible for the forfeitures in Fisher's criminal case. *Id*. ¶ 2.  The government contends that AFT "plays an integral role in criminal cases" because the Team reviews and approves forfeiture language in criminal pleadings, and the Team discusses facts, illegal proceeds, money judgment amounts, and property used to facilitate crimes related to criminal prosecutions.  ECF No. 235 at 2-3.

Specific to Joshua Fisher's co-defendant Justin Fisher, Hollingsworth contends that he was indicted on February 28, 2017, which indictment included a forfeiture allegation. *Id*. at 3.  In a case such as Justin's (but without verifying such an email was sent in that case), the government states an email to the AFT (including Humphreys), would "typically" be sent by the AUSA in charge of the prosecution seeking review and approval of forfeiture language. *Id*. at 3-4.  The government also states that Hollingsworth (not Humphreys) filed a "bill of particulars expanding on the forfeiture allegation" against Justin Fisher following a superseding indictment filed by the USAO in November 2017. *Id*. at 4-5.

On November 28, 2017, Joshua Fisher was charged through a superseding indictment that included forfeiture allegations. *Id*. at 4.  Before the indictment was filed, the AUSA prosecuting the case sent a draft indictment to the AFT (including Humphreys) that "would have either drafted or reviewed and approved the language in the forfeiture allegations … after discussing the facts of the case so that the forfeiture allegations would be charged correctly …." *Id*.  Thereafter, Hollingsworth filed a bill of particulars that expanded the forfeiture allegations in Joshua Fisher's indictment. *Id*. at 4-5.  The government also contends that Joshua Fisher's case "would have been discussed … in one or more weekly asset forfeiture meetings" attended by Humphreys. *Id*. at 5.  There are no allegations that Humphreys personally drafted, reviewed or approved forfeiture language in Joshua or Justin Fisher's case.  There are no facts describing what was discussed at any meeting in which either Fisher prosecution was raised.

---

[1] In contrast to Hollingsworth's Declaration, the government's Motion states that it was not unusual for AUSAs on the AFT "to be assigned to more than 300 criminal cases at a time." ECF No. 235 at 2.

On September 19, 2018, the AUSA prosecuting Justin and Joshua Fisher's cases sent the AFT a draft plea agreement that included forfeiture language for approval. *Id*. The government states that "[t]o give effect to the forfeiture provisions," the AFT "composed draft Preliminary Orders of Forfeiture for both Fishers …." *Id*. The draft orders directed anyone who claimed an interest in the forfeited property to "serve a petition" on Humphreys and Hollingsworth. *Id*.[2] Humphreys then left the USAO at the end of October 2018. *Id*.

B.  Facts as Stated in Defendant's Opposition.

Humphreys does not dispute that he was assigned to the AFT while employed by the Nevada USAO, which he says was from 2009 through October 2018. ECF No. 239 at 3. Humphreys describes his responsibilities as limited to litigating "stand-alone civil forfeiture cases as well as reviewing forfeiture documents … utilized" by the AUSA's criminal division. *Id*. Humphreys explains the government is wrong when it says he was "assigned" to Justin or Joshua Fisher's case; rather, he was "responsible for the asset forfeiture component" of the cases and "all criminal cases that contained forfeiture allegations." *Id*. at 3-4. Humphreys never participated in the criminal prosecution of any defendant while employed by the USAO, "[n]or did he participate in any pretrial or trial strategy regarding the substantive elements of any criminal offenses and/or prosecutions." *Id*. at 4. Humphreys summarizes his role in criminal proceedings as "providing assistance and support to criminal AUSAs[] *for the forfeiture component ONLY of criminal cases*." *Id*. at 5 (emphasis in original). Humphreys did this for approximately 300 cases each year. *Id*.

Humphreys has no independent memory of involvement with Joshua Fisher's case, and if he was involved, a fact he says is possible, "his involvement was perfunctory." *Id*. at 6. To this end, Humphreys states that during his eight years with the USAO he does not recall ever participating in a substantive strategy discussion in a criminal case. *Id*. at 6-7.

**II. Discussion**

The determination of whether counsel should be disqualified is a discretionary one. *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983). A "motion to disqualify

---

[2]  The draft Preliminary Orders of Forfeiture were never filed because the Fishers declined the plea offers. *Id*. at 5.

… can be a powerful litigation tactic to deny an opposing party's counsel of choice," *In re Cty. of Los Angeles*, 223 F.3d 990, 996 (9th Cir. 2000), and as a result, there is an inherent "potential for abuse." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (citation and internal quotation marks omitted). For this reason, motions to disqualify counsel are "subjected to particularly strict judicial scrutiny." *Optyl Eyewear*, 760 F.2d at 1050. The party moving for disqualification "must satisfy a high standard of proof," *In re Marvel*, 251 B.R. 869, 871 (Bankr. N.D. Cal. 2000), *aff'd*, 265 B.R. 605 (N.D. Cal. 2001), by producing "substantial evidence" of facts justifying disqualification, *Visa U.S.A. v. First Data Corp.*, 241 F.Supp.2d 1100, 1104 (N.D. Cal. 2003), such that the asserted "impropriety is clear." *In re Coordinated Pretrial Proceedings*, 658 F.2d 1355, 1361 (9th Cir. 1981). Disqualification cannot be premised on "general and conclusory allegations," *Chuck v. St. Paul Fire & Marine Ins. Co.*, 606 P.2d 1320, 1325 (1980), or "concerns which are merely anticipatory and speculative." *Marvel*, 251 B.R. at 871.

The government relies on Nevada Rule of Professional Conduct ("NRCP") 1.11 (titled "Special Conflicts of Interest for Former and Current Government Officers and Employees") and 18 U.S.C. §207 (titled "Restrictions on former officers, employees, and elected officials of the executive and legislative branches") to support its disqualification argument. NRCP 1.11(a) states:

> (a) Except as law may otherwise expressly permit, a lawyer who has formerly served as a public officer or employee of the government: (1) Is subject to Rule 1.9(c); and (2) Shall not otherwise represent a client in connection with a matter in which **the lawyer participated personally and substantially** as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation.

(Emphasis added.) 18 U.S.C. § 207 states in relevant part:

> (a) Restrictions on All Officers and Employees of the Executive Branch and Certain Other Agencies. (1) Permanent restrictions on representation on particular matters.—Any person who is an officer or employee (including any special Government employee) of the executive branch of the United States (including any independent agency of the United States), or of the District of Columbia, and who, after the termination of his or her service or employment with the United States or the District of Columbia, knowingly makes, with the intent to influence, any communication to or appearance before any officer or employee of any department, agency, court, or court-martial of the United States or the District of Columbia, on behalf of any other person (except the United States or the District of Columbia) in connection with a particular matter— (A) in which the United States or the District of Columbia is a party or has a direct and substantial interest, **in which the person participated personally and substantially as such officer or employee** ….

(Emphasis added.) The Code of Federal Regulation at 5 C.F.R. § 2641.201 offers definitions of various phrases used in 18 U.S.C.§ 207. In relevant part, § 2641(i)(2)(i) defines to participate personally as participating "(i) Directly, either individually or in combination with other persons …." Under § 2641(i)(3), to participate substantially "means the employee's involvement is of significance to the matter. Participation may be substantial even though it is not determinative of the outcome of a particular matter. However, it requires more than official responsibility, knowledge, perfunctory involvement, or involvement on an administrative or peripheral issue. A finding of substantiality should be based not only on the effort devoted to a matter, but also on the importance of the effort."

It is noteworthy that neither the government's Motion nor Humphreys' Response includes a recollection of any specific acts or involvement by Humphreys in Joshua Fisher's case. The government offers an explanation of what the AFT does generally by virtue of its standard operating procedure, that Humphreys had access to information (but not that he accessed any information), that the AFT "would have either drafted or reviewed and approved the language in the forfeiture allegation" against Joshua Fisher," that Hollingsworth filed a bill of particulars in the Joshua Fisher matter, that Humphreys was on group emails sent by AUSAs in the criminal division, and the AFT held weekly forfeiture meetings at which the Joshua Fisher case "would have [been] discussed. ECF No. 235 at 3-5. Nowhere in these representations by the government is there any discussion of any act taken by Humphreys relating to Joshua Fisher's prosecution let alone forfeiture. The government does not allege that Humphreys ever accessed or was part of a discussion that would demonstrate "substantial," personal participation in Joshua Fisher's prosecution or forfeiture. The allegations are all about the "forfeiture team" evidencing that the government attorney with whom Humphreys worked, Dan Hollingsworth, likely has no recollection of Humphreys being personally and substantially involved in any aspect of Joshua Fisher's case.

The government cites *United States v. Smith*, 995 F.2d 662 (7th Cir. 1993) in support of disqualification. In that case, an attorney who made an appearance for Smith, five days into his trial was the former Chief of the Narcotics and Dangerous Drugs Section of the United States Attorney's Office for the Southern District of Florida, who supervised and had substantial involvement in a

parallel investigation concerning a related conspiracy. *Id*. at 675.  Through an *in camera* hearing, the Court learned that the attorney seeking to represent Smith was the immediate supervisor of the attorney in charge of an investigation in South Florida that was intertwined with the investigation and prosecution of another defendant, and that "[i]n addition to his supervisory responsibilities, … [the attorney] signed an immunity agreement for one of the government's major witnesses in this case and attended high level department meetings regarding the two investigations." *Id*. at 675-76. The facts in *Smith*, which demonstrate substantial personal involvement, are inapposite to the facts at bar.  There is no allegation by the government that Humphreys supervised attorneys integrally involved in fact gathering or the prosecution of Joshua Fisher's codefendant; nor was Humphreys the former chief of the division overseeing the prosecution of child pornography cases.  Rather, the government discusses general propositions such as standard procedures and that Humphreys was one of many included on emails regarding forfeiture issues relating to Joshua Fisher.  The facts in *Smith* are clearly distinguishable from the facts at bar.[3]

It is undisputed that Humphreys left the USAO in October 2018, approximately 18 months before he commenced representation of Joshua Fisher at the appellate stage of proceedings.  ECF No. 203.  The lack of specific recollections of Humphreys' involvement in the matter while with the USAO, together with the lapse of time, lends support to finding that Humphreys' involvement in the Joshua Fisher matter was simply not substantial.  *United States v. Obendorf*, Case No. 1:15-cr-

---

[3] The government relies on several clearly distinguishable cases in support of its Motion. In *United States v. Ta*, 762 F.Supp. 762 (D. Utah 1996), the former AUSA was a supervising attorney who assigned and oversaw the prosecuting AUSA and had detailed conversations regarding the case on several occasions. *Id*. at 762-63. In *United States v. Clark*, 333 F.Supp.2d 789 (E.D. Wis. 2004), the government offered specific evidence establishing substantial involvement. This analysis is equally true for *United States v. Montemayor*, Case No. 1:09-CR00551-WSD-JFK, 2017 WL 2493906, at *8 (N.D. Ga. Apr. 6, 2017), in which the evidence established the disqualified attorney participated personally and substantially "not only in the particular matter of the related drug trafficking investigations … but that he participated personally and substantially in the investigation of [another drug trafficking organization] … out of which the charges against Defendant were a direct consequence."

002544-BLW, 2016 WL 1595347, at *2 (D. Id. Apr. 20, 2016).[4] Further, the Ninth Circuit recognizes that "the assumption of free flow of information within private law firms" does not hold true for large government agencies such as the USAO. *Matter of Grand Jury Investigation of Targets*, 916 F.Supp. 1374, 1378 (S.D. Cal. 1996) (citing *United States v. Weiner*, 578 F.2d 757, 767 (9th Cir.), *cert. denied,* 439 U.S. 981 (1978)).[5]

In considering the totality of the information presented, including limited evidence of Humphreys' involvement in Joshua Fisher's underlying criminal prosecution, the Court finds the government has not met the high burden of proof necessary to support disqualification.

The government requests that, in the event disqualification is not granted, the Court advise Defendant of the potential conflict of interest based on Humphreys' "duty of loyalty" to the United States as a former AUSA. The government also asks the Court to provide Fisher the opportunity to ask "questions about the nature and consequences of his attorney's representation," and require "a narrative response indicating that Fisher has been advised of his rights, understands the potential conflicts and perils of his present representation …." ECF No. 235 at 12-13. The government provides no authority for asking the Court to become involved in advising Joshua Fisher of potential conflicts of interest, and the Court located none. Further, the government identifies no "perils" of the present representation and the Court has identified no conflict of interest. Based on the minimal involvement Humphreys may have had with the forfeiture allegations made in the underlying case, it is unclear what conflict of interest the government believes does or may exist. If a conflict should arise in the future, Humphreys has an independent duty to advise his client and, if appropriate, withdraw as counsel for Joshua Fisher. Nonetheless, the Court will order that Counsel for Humphreys discuss with Joshua Fisher the basis for the government's Motion as well as this Order.

---

[4] The government cites *United States v. Kincade*, Case No. 2:15-cr-00071, 2016 WL 4577006, at *2 (D. Nev. Sept. 1, 2016) for the proposition that "the passage of time or the attorney's representation that he or she does not recall any confidential information does not relieve the attorney from disqualification." ECF No. 235 at 9. However, in *Kincade*, a defense attorney appointed to represent Kincade was a former member of the U.S. Attorney's Office in the same district who, in that capacity "performed official duties relating to" the defendant's previous 2007 criminal conviction, and requested the defendant's 2011 robbery charge and petition for violation of conditions of supervised released be assigned to her to prosecute. *Kincade*, 2016 WL 4577006, at *1. That the attorney who had prosecuted the same person she now sought to represent did not recall any confidential information did not relieve the attorney in that circumstance from disqualification. *Id*. at *2.

[5] The court in *Matter of Grand Jury Investigation* was discussing ABA Model Rule 1.11(c)(1) and imputed disqualification of government attorneys.

Counsel shall answer any questions Mr. Fisher has.  Thereafter, Counsel for Humphreys must file a notice with the Court advising that she has complied with the Court's Order and verify whether Joshua Fisher expressed any concerns or had questions that should be addressed by the Court.

### III.    Order

Accordingly, IT IS HEREBY ORDERED that the Motion to Disqualify Defendant Joshua Ray Fisher's Appellate Counsel (ECF No. 235) is DENIED.

IT IS FURTHER ORDERED that Counsel for Michael Humphreys shall speak with Defendant Joshua Fisher and discuss the basis for the government's Motion as well as this Order. Counsel shall answer any questions Mr. Fisher has.  Thereafter, Counsel for Humphreys shall file a notice with the Court advising that she has complied with this Order.  Counsel for Humphreys shall include in her filing whether Joshua Fisher expressed any concerns regarding Humphreys' continued representation or if he had questions that should be addressed by the Court.

Dated this 16th day of September, 2021.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE